UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:06-CR-3-TLS |
| | ) | |
| DAMONE T. ABERNATHY | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Suppress [DE 17], filed on March 31, 2006. The Fourth Amendment issue raised by the Defendant's Motion is whether the police officer who stopped the Defendant had probable cause to do so. The officer testified at the suppression hearing that he saw the Defendant commit several traffic violations before he attempted to stop him. The Defendant argues that because the police officer's testimony, report, and probable cause affidavit are fraught with mistakes and inconsistencies, the government cannot rely on his testimony. They argue that without his testimony, there is no evidence of probable cause to stop the Defendant for the commission of a traffic violation and, therefore, the ensuing chase, arrest, and the drugs and gun recovered during an inventory search of his car should be suppressed. The Defendant submits that, in addition to these mistakes, the officer lied during the evidentiary hearing and cannot be believed regarding what he observed.

**BACKGROUND**

On January 25, 2006, the Defendant, Damone T. Abernathy, was charged with knowingly and intentionally possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1) and knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c). On March 31, 2006, the Defendant moved to suppress the drugs and firearm

found in his vehicle because they were obtained during an unconstitutional stop. He also requested that any statements he made to agents while he was incarcerated be suppressed as fruits of the poisonous tree. On March 2, 2004, the government filed its Opposition to Defendant's Motion to Suppress submitting that because the Defendant filed his Motion two months after the court-ordered pretrial deadline, the motion was untimely and should be deemed waived. The government argued in the alternative that an evidentiary hearing was not necessary and that the traffic stop was constitutional.

On May 11, 2006, the Court conducted an evidentiary hearing on the Motion to Suppress. The Defendant and his counsel, Thomas O'Malley, were present. The government was represented by Assistant United States Attorney Tina Nommay. The Court heard witness testimony and reviewed submitted exhibits. At the conclusion of the hearing, the Court took the Motion under advisement and the parties were given additional time to file briefs. On June 27, 2006, the Defendant filed his Brief in Support of Motion to Suppress. On July 26, the government filed its brief and on August 9 the Defendant submitted his final brief and request for oral argument. On August 15, 2006, the Court heard oral argument.

## STATEMENT OF FACTS

The events that are the subject of this Motion to Suppress took place in the southeast quadrant of Fort Wayne, Indiana. To put the statement of facts in context, a map of the relevant area is attached to this Opinion and Order.[1]

---

[1] This map was obtained from MapQuest. *See* www.mapquest.com/maps. A similar map, showing a larger area, was introduced during the evidentiary hearing as Defendant's Exhibit A.

At about 3:00 on the morning of January 5, 2006, Abernathy was driving a red car in the southeast area of the City of Fort Wayne. As police would later learn, his blood alcohol level was over the legal limit. Fort Wayne Police Officer Gregory M. Woods was patrolling in the vicinity that Abernathy was driving. He was a "floater" that night, brought over from his normal patrol in the southwest quadrant.

Officer Woods completed a traffic stop in the Rudisill Boulevard and Hanna Street area and resumed his patrol going west on Rudisill. After he turned north on Lafayette Street, he saw in front of him the red car that Abernathy was driving. Officer Woods noticed that the car was moving slowly. He then saw the car turn right on Hamilton Avenue without using a turn signal. Officer Woods followed the car and again saw the driver fail to use his turn signal as he turned right on Warsaw Street. Officer Woods followed the car south on Warsaw, but decided not to stop the driver. Instead, he turned left onto Gumpper Avenue and then right on Hanna Street—only to see the red car ahead of him again.[2] This time, he observed that the car's right brake light did not function properly as the driver made a left turn onto Baxter Street. Officer Woods got behind the car and activated his emergency lights. He was going to stop the car and warn the driver to use his turn signal.

Instead of stopping, the car sped up and turned north onto Weisser Park Avenue. As the car continued north on Weisser Park and crossed back over Rudisill, Woods advised dispatch that he was attempting to conduct a traffic stop on a vehicle that was not stopping. Officer Woods activated his siren. His in-car video camera, which is supposed to begin recording when the emergency lights

---

[2] If Abernathy kept going south on Warsaw, turned left on Richardsville Avenue, and turned right again on Hanna, he would end up in front of Officer Woods traveling south on Hanna. They would be south of Rudisill.

3

are activated, began recording near the intersection of Weisser Park and Rudisill. Abernathy made two more left turns, the first on Hamilton Avenue and the second down an alley (not shown on the map) between Weisser Park and Hanna Street, before jumping from his moving car. The car came to a stop when it hit a utility pole.

As Abernathy ran through a residential area to the east, Officer Woods, joined by Officer David Tinsley pursued him on foot. Officer Tinsley caught Abernathy. Officers Dan Royse and Justin Holmes conducted an inventory search of the car and arranged for it to be towed. Inside the car, officers found drugs and a handgun. Abernathy was taken to a hospital where his blood alcohol level tested between .08 and .14.

The parties do not dispute that Officer Woods testified to these facts at the suppression hearing. However, the Defendant "does not concede that the facts are truthful or that they can in anyway [sic] be relied upon." (DE 25 at 1.) He argues that Officer Woods' testimony is unreliable and incredible because it is filled with the contradictions that are highlighted below.

At the suppression hearing, Officer Woods testified on direct examination that he saw the red car after he resumed his patrol on Rudisill. (Tr. 6.) ("I was back on Rudisill Boulevard, heading westbound when I observed a —back on Rudisill Boulevard going west—westbound to Lafayette, approaching Lafayette. I then observed another red vehicle ahead of me.") He later clarified, in response to defense counsel's question whether he said the red car turned on Layfayette, that he did not see the car until he was on Layfayette. (Tr. 18) ("I didn't observe the vehicle until I turned onto Lafayette. The vehicle was already on Lafayette.").

The Defendant also points to inaccuracies in the police report that Officer Woods prepared on January 5, 2006, after the incident with Abernathy. The report indicates that Officer Woods was

4

on Warsaw Street when he observed a red vehicle traveling at a low speed and that he saw the car fail to signal two right turns. (Supp. Hrg. Ex. B.) Officer Woods testified that the infractions occurred at Lafayette and Hamilton and Hamilton and Warsaw (Tr. 26, 27), and admitted that the report made it appear that he was driving on Warsaw when he saw the right turn infractions. The report also mistakenly referred to the turns that the Defendant made after Officer Woods activated his emergency lights as right turns instead of left turns. (Supp. Hrg. Ex. B) ("The vehicle made a right turn onto Hamilton St. I followed the vehicle. The vehicle then made a right turn into the alleyway between the [sic] Hanna St. and Weisser Park."). Officer Woods admitted that this part of his report was also a mistake.

> Q. Now, you wrote "The vehicle then made a right turn onto Hamilton Street."
> A. That's a mistake, sir.
> Q. All right.
> A. Left hand.
> Q. So that's inaccurate also?
> A. Yes.
> Q. Because your testimony today was he made a left turn, correct?
> A. Correct.
> Q. All right. And then you said the vehicle then made a right turn into the alleyway between Hanna and Weisser Park, correct?
> A. It would be left hand.
> Q. Pardon?
> A. It would have been a left hand turn.
> Q. Okay. So that's a mistake also?
> A. Yes, sir.

(Tr. 33.)

Officer Woods also included some information about the recovered drugs in his report. He noted that Officer Holmes told him that he found two bags of drugs in the glove box. One with a white powdery substance and the other with chalky white pieces. Officer Holmes, however, indicates in his report that he recovered three plastic baggies containing various amounts of a white

5

chalky substance. (Supp. Hrg. Ex. F.) He testified at the hearing that he believed his report was accurate.

In addition to his report, Officer Woods' also drafted, completely from memory, an affidavit of probable cause. The affidavit contains a mistake. Officer Woods wrote that he attempted to conduct a traffic stop on the car the Defendant was driving for failure to signal his left hand turns.

Regarding both his report and affidavit, Officer Woods testified that, other than the direction of the turns or the names of the streets, there was nothing in his accounts that he would change because they were otherwise true and accurate. (Tr. 49.)

At the suppression hearing, the Defendant asked Officer Woods' questions regarding when he activated his emergency lights. Officer Woods testified that he activated his lights after he turned on Holton. After Officer Woods was provided with a map, he saw that the street that he thought was Holton was actually Baxter. He testified that he activated his lights around Baxter and Weisser Park. His in-car video camera, which is supposed to start recording when his lights are activated, did not start recording until Officer Woods was near the intersection of Warsaw and Rudisill. Officer Woods did not know whether the camera was working properly.

The traffic tickets for failure to signal turns, driving while suspended, and operating while intoxicated were also introduced into evidence. When presented with the ticket for failure to signal, Woods testified that he wrote the ticket. The ticket provided that the place of the infraction was "Hanna @ Hamilton." Officer Woods testified that this was not the location of the infraction. Officer Royse later testified that he wrote out the ticket, as well as the other tickets, and that Officer Woods only signed the bottom of the ticket. (Tr. 61, 63.) He explained that he wrote that the violations occurred at "Hanna @ Hamilton" because he usually writes the location that dispatch puts in the

6

computer system, not the exact location where the infractions occurred. (Tr. 64–65.)

## CONCLUSIONS OF LAW

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. When police officers stop an automobile and detain the occupants briefly, the stop amounts to a seizure within the meaning of the Fourth Amendment. *Whren v. United States,* 517 U.S. 806, 809–10 (1996). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. Any ulterior motive an officer may have for making the stop is irrelevant. *United States v. Bass*, 325 F.3d 847, 850 (7th Cir. 2003) (citing *Whren*, 517 U.S. at 813).

A traffic stop is similar to an investigative detention and is thus governed by the principles set forth in *Terry v. Ohio,* 392 U.S. 1 (1968). *United States v. Finke,* 85 F.3d 1275, 1278 (7th Cir. 1996). Police officers are justified in conducting a brief investigative stop if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Although reasonable suspicion requires more than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). In assessing the reasonableness of a *Terry* stop, the facts are "judged against an objective standard: would the facts available to the officer at the moment of seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *United States v. Tilmon*, 19 F.3d 1221, 1224 (7th Cir. 1994) (quoting *Terry*, 392 U.S. 21–22).

7

The parties do not dispute the applicable law or that if Officer Woods saw the traffic violations, as he testified that he did, the stop was reasonable under the Fourth Amendment. *See* Ind. Code § 9-21-8-25 (requiring use of turn signal before turning or changing from one lane of traffic to another). What has been presented for the Court's determination is whether Officer Woods' testimony is credible. The Defendant points to the following as evidence that Officer Woods' testimony is not credible or reliable: (1) he testified that he first saw the Defendant's red car going westbound on Rudisill toward Lafayette and later testified that he did not see the car until he turned from Rudisill onto Lafayette; (2) he wrote in his report that he was going south on Warsaw when he saw the Defendant make two right-hand turns without signaling, but testified that they occurred at different intersections; (3) he wrote in his report that the two turns that the Defendant made after Woods activated his lights were right-hand turns, but testified that they were left turns; (4) he stated in his probable cause affidavit that the basis for stopping the Defendant was his failure to signal left-hand turns, instead of right-hand turns; (5) he testified that he turned on Holton, instead of Baxter; (6) he did not testify correctly about the street he was on when he activated his emergency lights; and (7) his report that Officer Homes found two bags of drugs contradicts Officer Holmes' report that he recovered three bags. The Defendant also contends that Officer Woods lied during his testimony when he stated that he wrote out the ticket for failure to signal; Officer Royse actually filled in the ticket and Officer Woods only signed it. In addition, the Defendant argues that because Woods did not attempt to stop the Defendant when he failed to signal his turns initially, but only later when he by chance came across the same car, it was not the real reason for pulling the Defendant over.

The Defendant appears to advance two separate lines of argument with different

8

implications. First, the Defendant argues that Woods' numerous mistakes demonstrate his inattention to detail and make his entire testimony, including the fact that he observed three traffic violations, unreliable. As his second line of argument, he asserts that Woods made intentional misstatements, or lies, which suggests he fabricated the traffic infractions. The Court is not persuaded by either argument.

As to the mistakes, the Court finds that they are not material to Woods' testimony that he observed the Defendant fail to signal turns or that his brake light did not work. The Court does not think that because Officer Woods' testimony and reports contained errors and did not provide accurate details regarding the streets traversed and in which direction they traveled, that it cannot believe his testimony that the traffic infractions occurred at all. It is one thing for an officer to make a mistake or miss a detail about a street when testifying in court without a map or when writing a report or affidavit from memory. (Or for that matter, to inaccurately report what drugs another officer found.) It is quite another for an officer to pay so little attention while on patrol that he would mistakenly perceive that he observed a failure to signal or inoperable brake light when he did not actually see any such thing.

Although Officer Woods made various mistakes, he never changed his in-court testimony regarding the two right-hand turns, picking the car up again on Hanna, or the failure of the brake light to operate on a left-hand turn off of Hanna. On his direct examination he stated:

> I followed the vehicle on Layfayette heading northbound, and the vehicle made a right hand turn. I — the vehicle failed to signal its right hand turn. I followed behind it. We approached Warsaw. The vehicle made another right hand turn and failed to use his turn signal at that turn.  I followed the vehicle southbound on Warsaw, and then I ended up turning off on another street, and this vehicle continued southbound on Warsaw.  I then approached Hanna Street, headed southbound on Hanna Street, and then I observed the vehicle ahead of me again.

9

* * *

> [On Hanna Street] the vehicle went to make a left hand turn and when he indicated his left hand turn, he — the brake light on the right did not indicate his stop, did not operate. . . . I then proceeded behind the vehicle, went to activate my emergency lights, stop the vehicle.

(Tr. 7–9.)

Other than providing the missing detail of two street names that he did not remember while testifying on direct, this testimony never changed. When defense counsel provided Woods with a map, he was also able to identify that the first right hand turn that her reference in his direct examination was from Layfayette to Hamilton. After the map was introduce, he also saw that the street he thought was Holton was actually Baxter. Before he saw the map, Officer Woods testified that he only "believed," if he was "not mistaken," that Abernathy made a left on Holton. (Supp. Hr. Tr. 20, Officer Woods.) After he saw the map, he was able to affirmatively state that the street the Defendant turned on when Officer Woods noticed the problem with his brake light was Baxter. The Defendant's argument that Officer Woods changed his testimony regarding when he first saw the red car does not take into account the fact that Officer Woods original statement on this matter did not specifically indicate which street he was on when he first saw the red car. He testified that he was going west on Rudisill, approaching Lafayette and he "then observed another red vehicle ahead of me." He does not indicate whether he was still on Rudisill, or had already turned on Lafayette. His clarification of this does not constitute a contradiction.

Nothing that Officer Woods testified to was "exceedingly improbable." *See, e.g., United States v. Cardona-Rivera*, 904 F.2d 1149, 1152 (7th Cir. 1990) (stating that a judge's choice of whom to believe is conclusive on appeal unless the judge credits "*exceedingly* improbable" as opposed to "merely improbable" testimony). Stated another way, Officer Woods' account was not

"so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it." *Cardona-Rivera*, 904 F.2d at 1152 (citing *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985)). The mistakes the Defendant points to do not make Officer Woods' testimony internally inconsistent. But, his testimony was inconsistent with other writings that Officer Woods drafted. These, however, are explained by his inattention to detail or unfamiliarity with the area where the events unfolded on January 5, 2006.

It is entirely plausible that Officer Woods would remember the specific traffic violations at issue, but still make mistakes in his report and affidavit, which he drafted from memory. The area where Officer Woods observed the traffic violations was not his normal area of patrol. (Tr. 19) ("[S]outheast isn't my area, I usually patrol. I usually patrol southwest. So the street names I'm not familiar with."). He saw Abernathy's car on several occasions before he decided to issue a citation. Woods himself made eight turns from the time he first saw the red car until it came to rest against a utility pole. The Court finds that it was reasonable for Officer Woods to pay more attention to Abernathy's actions than to the street he was traveling on at 3:00 in the morning.

Moreover, Officer Woods' testimony regarding the portions of his report that contradicted his testimony was candid, non-evasive, and apologetic. Officer Woods admitted on cross-examination that the report he prepared of the incident made is appear that Abernathy failed to signal the two right hand turns while he was on going south on Warsaw Street. (While this was not accurate, Warsaw was one of the streets that Abernathy turned on.) He also freely testified that the reference to right turns should have been to left turns and was a mistake.

The evidence regarding Officer Woods' reporting demonstrates that, perhaps, he underestimated the importance of accurately reporting the streets he traversed and the directions he

11

traveled, placed too much confidence in his own memory, or simply did not devote enough time to writing his report. Officer Woods should have consulted a map as he wrote his report and should have double-checked his narrative for accuracy. Had he done these things, the parties would not be before the Court arguing whether the traffic stop was reasonable. This said, the evidence does not establish that his representation to this Court that he observed the Defendant fail to signal two right turns and saw that his brake light was not operational on a left turn and decided to stop him on this basis, was not accurate. It does not persuade the Court that Officer Woods lacked probable cause to attempt a traffic stop.

Officer Woods testimony must also be considered in context of all the evidence presented to the Court. The Defendant was driving with a blood alcohol level between .08 and .14. This tends to support Officer Woods' testimony that the Defendant failed to use his turn signal.[3] In contrast, the Defendant did not offer an alternative explanation of the events that transpired on January 5, 2006. Other than pointing to the mistakes in Officer Woods' account, the Defendant does not present any evidence that he did in fact follow all traffic rules. This was not a swearing contest where the Court was presented with the choice of whether to believe Officer Woods or to believe the Defendant. The Defendant submits no reason why Officer Woods would have attempted to stop the Defendant absent his observation of traffic violations. There is no evidence in the record that the Defendant was suspected of any criminal activity or that dispatch had advised officers to look for a red vehicle. Thus, there was no apparent reason to fabricate a traffic violation as an excuse to stop the car. The Defendant suggests that the traffic violations were merely a pretext, otherwise Officer

---

[3] The Court is not suggesting that this fact goes to whether there was probable cause to stop the Defendant. Rather, it is evidence that lends credibility to Woods' account because an impaired driver is more likely to commit traffic violations and travel at a low rate of speed.

Woods would have stopped him after the first violation, but does not indicate what it was a pretext for.

Officer Woods testimony that he decided, after observing the red car further, to stop the driver was credible. Nothing requires a police officer to stop a vehicle at the first sign of wrongdoing. Moreover, even if Officer Woods had not provided this explanation, an officer's subjective intent is not relevant in these circumstances. *Unites States v. Robinson*, 314 F.3d 905, 907 (7th Cir. 2003) (noting that "subjective motivations of an officer in stopping a vehicle are not relevant to an ordinary probable cause analysis") (citing *Whren v. United States*, 517 U.S. 806, 813 (1996)).

The Court, of course, does not suggest that inconsistencies in testimony can never reflect adversely on a witness's credibility. It simply finds that in this case, after observing the demeanor, speech, attitudes, and tone of voice of the witnesses at the hearing, and considering the materiality of the inconsistencies and the totality of circumstances, that Officer Woods testimony regarding the Defendant's failure to signal and malfunctioning brake light, is credible. Therefore, the stop was reasonable and the Defendant's Fourth Amendment rights were not violated.

The Court must also briefly address the Defendant's argument that Officer Woods lied when he testified that he wrote the ticket for failing to signal. The Court, which was in a position to observe Office Woods' tone, demeanor, and attitude, does not believe that his statement was an intentional falsehood. Rather, the Court finds that Officer Woods, because he signed the ticket, believed that he also wrote the ticket. The Court notes that Officer Woods was not given an opportunity to testify regarding the ticket after Officer Royse testified to filling out the top portion of the ticket. The Court can conceive of no purpose for Officer Woods to intentionally mislead it

into believing that he wrote a ticket that he did not actually write. The Court does not agree with the Defendant that this testimony so undermines Office Woods' credibility that it cannot rely on his account of the events of January 25, 2006.

Having determined that Officer Woods observed the Defendant fail to signal two turns in violation of Indiana law, the Court finds that he had probable cause to stop the Defendant and that his attempt to do so was reasonable under the Fourth Amendment.

## CONCLUSION AND ORDER

For the foregoing reasons, the Defendant's Motion to Suppress [DE 17] is DENIED. A telephonic scheduling conference is now set for September 20, 2006, at 11:30 a.m.

SO ORDERED on September 6, 2006.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

14